## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| YOUSEF ISMAIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 23 C 851 |
| | ) | |
| LOUIS DEJOY, POSTMASTER | ) | |
| GENERAL OF THE UNITED STATES | ) | |
| POSTAL SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

### <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Yousef Ismail has sued Louis DeJoy, Postmaster General of the United States Postal Service (hereinafter, Postal Service), for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1) & 2000e-3(a). The Postal Service has moved for summary judgment. For the reasons set forth below, the Court grants summary judgment in favor of the Postal Service on all of Ismail's claims.

### Background

The following facts are taken from the Postal Service's statement of facts and the exhibits attached to the parties' motions.[1]

Ismail is a man of Middle Eastern national origin employed by the Postal Service

---

[1] Ismail did not file a statement of facts per Local Rule 56.1 disputing the Postal Service's statement of facts. Accordingly, the statements in the Postal Service's statement of facts are deemed admitted. *See* N.D. Ill. LR 56.1(e)(3) ("To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material.").

as a postal carrier. Ismail works at the Carpentersville, Illinois post office and was, during the relevant period, supervised by Salvatore Calabrese. Calabrese is "an American man of Italian descent." Def.'s SOF ¶ 3. There are approximately twenty postal carriers employed at the Carpentersville office, and Calabrese supervises all of them.

Ismail began working at the Carpentersville post office in 2001. On a typical day, Ismail begins work at approximately 7:30 a.m. His responsibilities as a postal carrier include casing and sorting mail and making deliveries along his assigned route. Casing mail is a daily process conducted at the start of a postal carrier's shift. At the end of the casing process, a mail carrier may submit a 3996 form to his or her supervisor "so he can be aware of what our time for that day is since the mail is different from day to day." Ismail Dep. at 15:3–15:5.

Turning to the specific facts underlying this dispute, Ismail alleges that he has been subjected to repeat harassment and discrimination by Calabrese and that after he filed EEO complaints, Calabrese retaliated against him by ratcheting up the harassment and discrimination. According to the record, Ismail filed eight EEO complaints from 2003 through 2018. He filed the EEO complaint underlying this action on June 10, 2022, asserting five race discrimination and retaliation claims. The following incidents underpin Ismail's complaint in this case:

> (1) On February 11, 2022, Ismail was escorted from his work premises by the police and put on emergency placement; (2) On March 2 and April 30, 2022, there were errors in Ismail's timekeeping; (3) On April 1, 2022, Calabrese told Ismail how much overtime was needed for his route; (4) On May 26, 2022, Calabrese conducted an annual route inspection with another supervisor; and (5) On June 2, 2022, Calabrese stood too close to Ismail while he was talking to the union steward.

Def.'s Mem. in Supp. of Mot. for Summ. J. at 5; *see also* Def.'s SOF ¶¶ 14–34.

On February 10, 2023, Ismail filed the present lawsuit against the Postal Service, alleging discrimination (count 1) and retaliation (count 2) in violation of Title VII.

## Discussion

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when, after drawing all reasonable inferences from the record in favor of the nonmoving party, a reasonable trier of fact could return a verdict for the nonmovant. *Id.* The bare existence of a factual dispute is insufficient to defeat a properly supported motion for summary judgment—"the requirement is that there be no *genuine* issue of *material* fact." *Id.* When the evidence, considered as a whole, would not lead a rational trier of fact to find for the nonmoving party, there is no genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## A.    Discrimination (Count 1)

Title VII makes it unlawful for an employer to discharge, discipline, "or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In disparate treatment cases, plaintiffs may prove discrimination through either the direct or indirect method. *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). Under the direct method, "a

plaintiff must marshal sufficient evidence, either direct or circumstantial, that an adverse employment action was motivated by discriminatory animus." *Naficy v. Ill. Dep't of Hum. Servs.*, 697 F.3d 504, 509 (7th Cir. 2012). "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). In other words, the question "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id.*

The indirect method, also known as the *McDonnell Douglas* burden-shifting method, requires a plaintiff to establish a prima facie case of discrimination "with evidence that (1) [he] is a member of the protected class; (2) [he] met [his] employer's legitimate job expectations; (3) [he] suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably." *Naficy*, 697 F.3d at 511. If the plaintiff can establish a prima facie case, "the burden shifts to [the employer] to introduce a legitimate, nondiscriminatory reason for the employment action." *Id.* If the employer makes such a showing, the burden shifts back to the plaintiff, who can "avoid summary judgment with evidence suggesting that [the employer's] stated reason is in fact pretextual." *Id.*

It is undisputed that Ismail, who was born in the Palstinian territories and emigrated to the United States from Jordan, is a member of a protected class under Title VII and that he "was meeting the Postal Service's legitimate expectations." Def.'s Mem. in Supp. of Mot. for Summ. J. at 7. The Postal Service contends that Ismail's discrimination claim fails because "none of Ismail's asserted claims is an adverse

employment action." *Id.*

### 1. Adverse action

As the Supreme Court has recently clarified, "[t]he words 'discriminate against,' we have explained, refer to 'differences in treatment that injure' employees." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024) (quoting *Bostock v. Clayton County*, 590 U.S. 644, 681 (2020)). To make out a discrimination claim under the plain language of Title VII, a litigant need only "show that the [employer action] brought about some 'disadvantageous' change in an employment term or condition." *Id.* "Material" or "significant" adverse action is not required:

> What the [plaintiff] does not have to show, according to the relevant text, is that the harm incurred was significant. Or serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar. "Discriminate against" means treat worse . . . . But neither that phrase nor any other says anything about how much worse. There is nothing in the provision to distinguish . . . between [employer action] causing significant disadvantages and [employer action] causing not-so-significant ones. And there is nothing to otherwise establish an elevated threshold of harm. To demand 'significant' is to add words—and significant words, as it were—to the statute Congress enacted. It is to impose a new requirement on a Title VII claimant, so that the law as applied demands something more of [him] than the law as written.

*Id.* at 355 (cleaned up).[2] The Supreme Court has also clarified that the "'terms [or] conditions' phase . . . is not used in the narrow contractual sense" and that "it covers more than the economic or tangible." *Id.* at 354 (citation and quotation marks omitted).

---

[2] In its memorandum in support of its motion for summary judgment, the Postal Service incorrectly asserts that "[f]or an employment action to be actionable, it must be a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits." Def.'s Mem. in Supp. of Mot. for Summ. J. at 7–8 (quoting *Lewis v. City of Chicago*, 496 F.3d 645, 652 (7th Cir. 2007)). Given the Supreme Court's decision in *Muldrow*, this is no longer the correct legal standard.

Accordingly, a term or condition of employment includes the "what, where, and when" of an employee's work. *Id.*

As a starting point, Ismail's EEO complaint cited five instances of discriminatory or retaliatory conduct that underpin his complaint in this case. In its reply brief, the Postal Service contends that "Ismail's response only addresses a single claim—his February 11, 2022, emergency placement." Def.'s Reply in Supp. of Mot. for Summ. J. at 4. Parsing Ismail's response, the closest Ismail comes to relying on claims outside the February 11 incident is via a handful of sentences that "there was an increase in scrutiny by Defendant, Calabrese, after Mr. Ismail filed the EEO complaint," that "Calabrese exhibited nitpicky behavior towards Mr. Ismail in regards to how long his route needed to be," and that "Calabrese's excessive monitoring and intervention in Plaintiff's work and union interactions were intended to create a hostile environment and deter him from pursuing additional EEO claims." Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J. at 5. Ismail, however, provides no evidence to support the contention that Calabrese exhibited "nitpicky" behavior towards him. Given Ismail's failure to file the required statement of facts under Local Rule 56.1, and his failure to point to any evidence other than the February 11 incident to support his claims, the Court finds that Ismail has abandoned all claims of discrimination other than those related to the February 11 incident. *See Palmer v. Marion County*, 327 F.3d 588, 597–98 (7th Cir. 2003) (holding that a party abandons a claim if he fails to delineate the claim "in his district court brief in opposition to summary judgment").

It is undisputed that, on February 11, 2022, Ismail was escorted from his work premises by police officers and put on emergency placement following an altercation

with Calabrese. *See* Def.'s SOF ¶¶ 14–22. This occurred at the beginning of Ismail's shift, on the workroom floor, in front of several other employees. *Id.*; *see also id.*, Ex. 2 at 40:5–40:16, 50:24–56:2 (deposition testimony of Benjamin Oswald describing the February 11 incident). A reasonable factfinder could determine that being publicly escorted from work by the police and put on emergency placement status without pay was, at a minimum, a difference in treatment that affected the "what, where, and when" of how Ismail does his job.

The Postal Service contends that, because Ismail's emergency placement "only resulted in a temporary and insignificant change in Ismail's employment status," it is not sufficient to establish an adverse action. But as the Supreme Court has pointedly stated in *Muldrow*, this is not the correct legal standard. Accordingly, the Court is not persuaded by the Postal Service's argument, and no reasonable factfinder could find otherwise. Ismail has put forth enough evidence for a reasonable factfinder to determine that the events on February 11 constitute an adverse action.

## 2. Similarly situated comparator

Though the Postal Service contends only that Ismail has failed to show adverse action regarding his discrimination claim, it does assert with regard to Ismail's parallel retaliation claim that the claim fails "because he has not identified similarly situated employees who were treated more favorably." Def.'s Mem. in Supp. of Mot. for Summ. J. at 13. Therefore, despite the organization of the Postal Service's memorandum, the Court will consider this argument as it relates to whether Ismail has identified a similarly situated employee outside his protected class who was treated more favorably in a way that would permit him to establish a discrimination claim via the indirect method.

7

The Seventh Circuit has stated that "[t]he similarly-situated analysis calls for a flexible, common-sense examination of all relevant factors.  All things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination."  *Coleman*, 667 F.3d at 846 (internal citation and quotation marks omitted).  Under this standard, a similarly situated employee "must be directly comparable to the plaintiff in all material respects, but they need not be identical in every conceivable way."  *Id.* (citation and quotation marks omitted).  Put differently, courts "look[] for comparators, not clone[s]."  *Id.* (citation and quotation marks omitted).

Whether a comparator is similarly situated is, generally, a fact-intensive determination that requires courts to assess whether there are "enough common factors . . . to allow for a meaningful comparison in order to divine whether intentional discrimination was at play."  *Id.* at 846–47 (citation and quotation marks omitted).  The relevant factors "depend on the context of the case" and typically require showing, at least, "that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or employer's treatment of them."  *Id.* at 847 (cleaned up).

It is undisputed that "Ismail identified five other city carriers supervised by Calabrese as possible comparators:  Deborah Eckler, James However, Mighele Sottile, Rodolfo Egler, and Allen Guerro."  Def.'s SOF ¶ 35.  Of these five, "Ismail has identified Deborah Eckler, a white female employee, who engaged in a similar verbal altercation with Calabrese but was not subjected to emergency leave or police intervention."  Pl.'s

8

Resp. in Opp. to Def.'s Mot. for Summ. J. at 3.  It is undisputed that Eckler is supervised by Calabrese and that she is subject to the same standards of conduct as Ismail.  The Postal Service contends that Eckler does not qualify as a comparator because "the incidents [alleged by Ismail] are not even close to identical and she was not treated more favorably.  Her disagreement with Calabrese was not a yelling match with profanity that caused a scene on the workroom floor."  Def.'s Mem. in Supp. of Mot. for Summ. J. at 13.

Though Eckler's conduct does not need to be identical to Ismail's, it does need to be "similar" and "without such differentiating or mitigating circumstances as would distinguish their conduct or employer's treatment of them."  *Coleman*, 667 F.3d at 847. Ismail has not pointed to evidence showing that Eckler meets this standard; no reasonable jury could find otherwise.  Ismail relies entirely on the deposition testimony of Benjamin Oswald, his union steward at the time of the February 11 incident who also happened to be a nearby eyewitness, to support the contention that Eckler engaged in a similar altercation with Calabrese yet was not subjected to the same discipline.  But Oswald's testimony does not go as far as Ismail contends.  Oswald states, without naming any names, that "I have seen tensions rise to yelling and frustration between other carriers on occasion, between each other on an occasion I can recall.  And other times it's the carrier yelling or getting upset with Management how things—some issue." Oswald Dep. at 56:7–56:24.  According to Oswald, "I don't believe that those incidents resulted in the same outcome I believe that they were deescalated and handled differently."  *Id.* at 57:1.  These statements do not allow a reasonable factfinder to conclude that Eckler engaged in similar conduct as alleged against Ismail on February

11, 2022, for the simple reason that Oswald does not identify Eckler as someone he witnessed "yelling or getting upset with Management."  *See id.* at 56:14–56:15.  In fact, Oswald never once mentioned Eckler in his deposition—unsurprising, given that Ismail's counsel never asked Oswald about her.

Ismail's own deposition testimony is insufficient to permit a reasonable factfinder to find that the incident involving Eckler and Calabrese is sufficiently similar to be a valid point of comparison.  During his deposition, Ismail testified that Eckler "argue[d] with Salvatore [Calabrese].  And she got upset, and she was yelling at him."  Ismail Dep. at 38:17–38:18.  According to Ismail, this argument occurred on the workroom floor while other carriers were casing their mail; he says the police were not called and Eckler was not escorted off the premises following the incident.  *Id.* at 38:19–39:4.

The Postal Service has presented Calabrese's deposition to support its position that the alleged altercation between Eckler and Calabrese was not similar such that Eckler can serve as a comparator for Ismail's discrimination claim.  Calabrese was asked only once during his deposition about Eckler, and that involved "a disruptive disagreement that took place between Debbie Eckler and Mike Sottile"—not an altercation between Eckler and Calabrese himself.  Calabrese Dep. at 62:11–62:13. (The Court also had the Postal Service file the entire Calabrese deposition transcript so it could determine if there were any references to the claimed Eckler-Calabrese incident.  There were none.)  Regarding his February 11 altercation with Ismail, Calabrese testified that it was "the first time" that "an encounter like this between [himself] and a mail carrier has occurred on the work floor . . . to this extent."  *Id.* at 58:21–58:24.

10

This testimony amounts to the entire universe of facts presented about Eckler's alleged altercation with Calabrese. On this record, no reasonable factfinder could determine that Eckler's conduct was similar enough to that alleged against Ismail to serve as a valid point of comparison. *See Coleman*, 667 F.3d at 846–47.

Accordingly, the Postal Service is entitled to summary judgment on Ismail's claim of discrimination.

## B. Retaliation (Count 2)

Ismail also alleges that Calabrese retaliated against him for filing EEO complaints and union grievances. As previously discussed, the Court finds Ismail has abandoned all claims other than those arising from the February 11 incident. The Court's analysis is thus restricted to whether Calabrese's conduct on February 11—specifically, calling the police to escort Ismail off the work site and putting Ismail on emergency placement—was retaliatory under Title VII.

Like discrimination, a Title VII retaliation claim may be established by either the direct or indirect method. *Id.* at 859. To establish retaliation under the direct method, Ismail "must show that: (1) [he] engaged in activity protected by Title VII; (2) [his] employer] took an adverse employment action against [him]; and (3) there was a causal connection between [his] protected activity and the adverse employment action." *Id.* Ismail can establish causation by "showing that [his] complaints and EEO filings were a substantial or motivating favor in [his employer's] decisions to" take the alleged adverse actions against him. *Id.* at 860. Direct evidence of such motivation "would entail something akin to an admission by the employer ('I'm firing you because you have the nerve to accuse me of sex discrimination!')." *Id.* Because such evidence is typically not

available, the Seventh Circuit has recognized three categories of circumstantial evidence that permit the inference that an employee's protected activity was a substantial or motivating factor for the employer's adverse action. These are: (1) evidence of "suspicious timing, ambiguous statements oral or written, . . . and other bits and pieces from which an inference of [retaliatory] intent might be drawn"; (2) "evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently"; and (3) "evidence that the employer offered a pretextual reason for an adverse employment action." *Id.* (citation and quotation marks omitted).

Under the indirect method of proof, Ismail must show "that (1) he engaged in statutorily protected activity; (2) he was performing his job satisfactorily; and (3) he was singled out for an adverse employment action that similarly situated employees who did not engage in protected activity did not suffer." *Preddie v. Bartholomew Consol. School Corp.*, 799 F.3d 806, 814 (7th Cir. 2015).

A retaliation claim, unlike a discrimination claim under Title VII, requires showing that "the retaliatory action is 'materially adverse,' meaning that it causes 'significant' harm." *Muldrow*, 601 U.S. at 357 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). This heightened standard is appropriate "for reasons peculiar to the retaliation context. The test was meant to capture those (and only those) employer actions serious enough to dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* (cleaned up). Because "an action caus[ing] less serious harm . . . will not deter Title VII enforcement," it accordingly "falls outside the purposes of the ban on retaliation." *Id.*

There is no dispute that filing an EEO complaint is protected activity under Title

VII.  The Postal Service argues only that Ismail had no actionable adverse action taken against him, and that, even if he did, there is no evidence that would permit finding a causal connection between his EEO complaints and the alleged adverse action.  As the Court addressed above, a reasonable factfinder could find the actions taken against Ismail following the February 11 incident—specifically, being escorted from the work room floor by police in front of his co-workers and being put on emergency placement without pay for two days—are sufficient to establish adverse action under the standard applicable for discrimination claims.  A reasonable factfinder could likewise find that being escorted off the work floor by police and put on emergency placement could dissuade a reasonable employee from filing future EEO complaints.

The problem, however, is that Ismail cannot point to evidence that would permit a reasonable factfinder to conclude that his submission of EEO complaints was a motivating factor in Calabrese's decision to call the police on February 11 and put him on emergency placement.  Ismail contends that "the temporal proximity between Plaintiff's EEO activity and the adverse actions[] supports [his] retaliation claim."  Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J. at 4.  But Ismail does not cite to any evidence showing this so-called "temporal proximity."  Looking to evidence presented by the Postal Service, Ismail's most recent EEO complaint against Calabrese prior to the February 11, 2022 incident was in 2018, more than three years earlier.  *See* Def.'s SOF ¶ 9 & Ex. 4.  Without more, this is too far removed to permit a reasonable inference that it motivated Calabrese's actions against Ismail on February 11.  *See Anderson v. Donahoe*, 699 F.3d 989, 996 (7th Cir. 2012) (finding that a thirteen-month period between the plaintiff's protected activity and the adverse action, "without more, does not

create a genuine issue of fact on the inference of retaliation").

Ismail's more recent union grievances against Calabrese are temporally closer. A compilation of Ismail's union grievances shows that his most recent grievance against Calabrese before February 11, 2022, was submitted on January 13, 2022. *See* Def.'s SOF, Ex. 7. This grievance was for "unequal overtime between October 2021 and December 2021. Ismail noted his overtime hours were below average hours worked by other carriers on the overtime desired list during the last quarter of 2021." *Id.* ¶ 13. These grievances, however, do not qualify as protected activity under Title VII, as they include no reference to any sort of discrimination prohibited by Title VII. *See McHale v. McDonough*, 41 F.4th 866, 871–72. "The [protected activity]—whether formal or informal—must be about the discrimination. Merely complaining in general terms of harassment or discrimination, without specifying a connection to a protected class or providing facts to create such an inference, is insufficient." *Id.* at 872.

In short, Ismail has not pointed to any evidence that would support a reasonable inference that Calabrese's conduct on February 11 was motivated by Ismail's previous making of a complaint regarding discrimination based on his national origin or race. The most recent EEO complaint by Ismail against Calabrese that relates to his protected class status was filed in November 2018. And the complaint that is temporally close enough to allow an inference of retaliation—the January 2022 complaint—does not allege discrimination based on his protected class status. Under the circumstances, no reasonable factfinder could determine that Ismail has made out a valid retaliation claim under the direct method of proof.

Ismail's retaliation claim fails under the indirect method as well because he

cannot satisfy the third element: that "he was singled out for an adverse employment action that similarly situated employees who did not engage in protected activity did not suffer." *Preddie*, 799 F.3d at 814. Ismail fails to identify a similarly situated employee. The only comparator he points to is Eckler. Though it is undisputed that Eckler "did not engage in EEO activity," Def.'s Mem. in Supp. of Mot. for Summ. J. at 13, as discussed above, Ismail has not put forth evidence that would support a contention that Eckler engaged in similar conduct. There is nothing in the record to show that Eckler and Calabrese had an altercation that escalated to the degree of the February 11 incident. Accordingly, Ismail has failed to point to evidence permitting a finding that he was singled out while a similarly situated employee was treated more favorably, and no reasonable factfinder could find otherwise.

For these reasons, the Court grants summary judgment in favor of the Postal Service on count 2.

**C.      Hostile work environment**

In his response to the government's motion, Ismail appears to reframe either his discrimination claim, or his retaliation claim, or both, as a hostile work environment claim. *See* Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J. at 4–6. In response, the government contends that Ismail "neither administratively exhausted nor pleaded a hostile work environment claim" and that "he fails to show, or even argue, that he did so." Def.'s Reply in Supp. of Mot. for Summ. J. at 7.

**1.      Exhaustion of administrative remedies**

"As a precondition to the commencement of a Title VII action in court, a complainant must first file a charge with the Equal Employment Opportunity

Commission." *Fort Bend County v. Davis*, 587 U.S. 541, 543 (2019) (citing 42 U.S.C. § 2000e-5(e)(1), (f)(1)).  The Seventh Circuit has interpreted Title VII to require that "plaintiffs must exhaust administrative remedies and cannot bring claims in the lawsuit not in the original EEOC charge."  *McHale v. McDonough*, 41 F.4th 866, 869 (7th Cir. 2022) (noting that the Rehabilitation Act contains such an exhaustion requirement and that the Seventh Circuit has interpreted the Rehabilitation Act to contain the same exhaustion requirement as Title VII (citing *McGuinness v. U.S. Postal Serv.*, 744 F.2d 1318, 1319–20 (7th Cir. 1984))).

The Postal Service contends that Ismail alleged only "race discrimination and reprisal" at the administrative stage.  Def.'s Reply in Supp. of Mot. for Summ. J. at 7.  To support this, it points to Ismail's 2022 EEO complaint and the Postal Service's final agency decision.  In the 2022 complaint, however, Ismail does allege that "Calabrese created a hostile work environment" in addition to alleging discrimination and retaliation.  Def.'s SOF, Ex. 14.  Though the final agency decision from the Postal Service only addresses Ismail's discrimination and retaliation claims, *see id.*, Ex. 17, that does not mean Ismail never raised that issue in his EEO complaint.

The Postal Service also asserts that "[i]n his district court complaint, Ismail alleged only two counts:  race discrimination and retaliation, the same as his exhausted administrative claims."  Def.'s Reply in Supp. of Mot. for Summ. J. at 7.  Ismail's complaint does contain only two counts:  one alleging discrimination and one alleging retaliation.  *See* Compl. ¶¶ 30–43.  But in the factual allegations underpinning these claims, Ismail alleges that Calabrese "refused to comply with CDC/USPS guidelines by refusing to wear a mask and maintaining a six foot distance," "remained in close

proximity without a mark and intentionally watched Mr. Ismail as he continued working," made a comment as Ismail was being escorted out by police that "you thought I was kidding, I was very serious," incorrectly withheld overtime pay, "approached Mr. Ismail while Mr. Ismail was casing his mail to tell him how much extra overtime was needed to deliver the mail on his route," "brought another supervisor" to help conduct Ismail's yearly street observation, and "stood within close proximity to intentionally intimidate Mr. Ismail during [a] private conversation" with Oswald, his union steward at the time. Compl. ¶¶ 14, 15, 17, 24, 25, 27, 28. And Ismail alleges in the complaint that he "has been humiliated, ridiculed, ignored and berated in front of his colleagues and union representatives. Mr. Ismail has been consistently harassed by Postmaster Salvatore Calabrese." *Id.* ¶ 41. The Court concludes that Ismail's complaint, read fairly, includes a hostile work environment claim. It is of no consequence that he did not assert this as a separate "count"; after all, an employer's maintenance of a hostile work environment is a type of discrimination prohibited under Title VII. The Court will therefore assess whether Ismail's hostile work environment claim can survive summary judgment.

### 2. Hostile work environment

"A hostile environment claim falls under the general rubric of harassment at the workplace, which can amount to prohibited discrimination in terms and conditions of employment." *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1045 (7th Cir. 2022). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). This standard "take a middle path between making actionable

any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." *Id.*

A hostile work environment claim includes both an objective and subjective component. The plaintiff must show both that the conduct alleged was "severe or pervasive enough to create . . . an environment that a reasonable person would find hostile or abusive" and that the employee perceived the environment as abusive. *Id.* As the Supreme Court has explained, "if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment." *Id.* at 21–22. In addition to establishing that the conduct was subjectively and objectively offensive, a plaintiff must also show that "the harassment was based on [his] membership in a protected class; that the conduct was severe or pervasive; and that there is a basis for employer liability." *Cerros*, 288 F.3d at 1045.

A court considers the totality of the circumstances to determine whether an environment is hostile or abusive, and should consider such factors as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. There is no "magic number" of incidents that gives rise to an actionable hostile work environment claim; "a sufficiently severe episode may occur as rarely as once, while a relentless pattern of lesser harassment that extends over a long period of time also violates [Title VII]." *Cerros*, 288 F.3d at 1047.

The Court has already found that Ismail has abandoned all claims other than

those related to the February 11 incident.[3]  The Court assumes for purposes of

discussion, however, that being put on emergency placement and being publicly

escorted from the workroom floor by police is severe, humiliating, physically threatening,

and unreasonably interferes with an employee's work performance.

Ismail's hostile work environment fails, however, for the same reason as his

discrimination claim:  he points to no evidence that Calabrese's conduct toward him was

motivated by his membership in a protected class.  Based on the record before the

Court, no reasonable factfinder could make such a finding.  Ismail asserts that, on

February 11, Calabrese "had a complete disregard to maintain a respectful and

peaceful atmosphere as policy requires."  Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J.

at 5.  Oswald testified that he believed that Calabrese's "close proximity to Yousef was

one issue" that caused their disagreement to escalate.  Oswald Dep. at 54:3–54:12.

Oswald further testified that part of his decision to intervene that day was that Postal

Service policy "talks about a mutual respect atmosphere.  And I don't think that that was

being maintained at the time."  Id. at 55:8–55:10.  But nothing in Oswald's testimony

would allow a reasonable factfinder to determine that Calabrese's proximity to Ismail on

February 11 was motivated by Ismail's race or national origin.  And Ismail cites no other

evidence pointing in that direction.

Because Ismail has failed to provide evidence permitting a finding that any of

---

[3] Though Ismail included enough facts in his complaint to assert a hostile work
environment claim, that does not change the Court's determination that his responsive
motion opposing summary judgment contains only general assertions, unsupported by
evidence, regarding Calabrese's "nitpicky" behavior towards him.  As the Court has
already explained, Ismail did not file a proper statement of facts or presented no
evidence supporting his allegations regarding Calabrese's behavior, aside from the
February 11 altercation.

Calabrese's actions on February 11, 2022, were motivated by his race or national origin, the Postal Service is entitled to summary judgment on his hostile work environment claim.

## Conclusion

For the reasons stated above, the Court grants defendant's motion for summary judgment on all of plaintiff's claims [dkt. no. 49].  The Clerk is directed to enter judgment stating:  This case is dismissed with prejudice.

MATTHEW F. KENNELLY
United States District Judge

Date:  February 3, 2025